UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Peter Wheeler,**

                                 **Plaintiff,**

                                      v.                              9:03-CV-787

**G. S. Goord, Commissioner NYS DOCS, Frank Quimby, Sergeant, and G. Dupra, Correctional Officer,**

                                 **Defendants**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Peter Wheeler
Plaintiff, *Pro Se*

Hon. Eliot Spitzer, Attorney General, State of New York
Maria Moran, Esq., Assistant Attorney General
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455
Attorneys for Defendants

**Hon. Norman A. Mordue, D.J.:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

      Defendants move for summary judgment dismissing this action under 42 U.S.C. § 1983 brought by an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). Plaintiff's amended complaint claims that defendants failed to protect him from other inmates and that defendants retaliated against him for filing grievances and writing letters to prison authorities. Defendants' motion for summary judgment was referred to United States Magistrate Judge David E. Peebles for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

In a thorough Report and Recommendation, Magistrate Judge Peebles recommends that the motion for summary judgment be granted in part and denied in part. Specifically, he recommends that defendants' motion for summary judgment be granted to the extent of dismissing all claims against defendant G.S. Goord and further dismissing all claims against defendants Frank Quimby and G. Dupra except those claims based on their alleged failure come to plaintiff's aid following an attack by a fellow inmate on January 13, 2003.

Plaintiff has interposed an objection. Defendants have not objected to any part of the Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court conducts a *de novo* review of those parts of a magistrate judge's Report and Recommendation to which a party specifically objects. Where only general objections are filed, the Court reviews for clear error. *See Brown v. Peters*, 1997 WL 599355,*2- 3 (N.D.N.Y.), *aff'd without op.*, 175 F.3d 1007 (2d Cir. 1999). Failure to object to any portion of a Report and Recommendation waives further judicial review of the matters therein. *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993). As set forth below, the Court adopts the Report and Recommendation in its entirety.

## BACKGROUND

The Court adopts Magistrate Judge Peebles' recitation of the factual background of the case, which follows:

> Plaintiff, who has been in the custody of the DOCS and assigned to various prison facilities since October 18, 1995, was transferred in May, 2002 into the Franklin Correctional Facility ("Franklin"), where most of the events recited in his complaint occurred, and remained there until February 7, 2003, when he was transferred to another prison. Central to plaintiff's claims is an incident which occurred at Franklin on January 13, 2003, involving the plaintiff and another inmate. As will be seen, the parties' versions of the relevant events are significantly at odds.
>
> According to Wheeler, on that date he was attacked by an inmate after taking a shower, and while in route back to his cube. Plaintiff maintains that the other inmate

attacked him with a can secreted in a sock, and that despite Wheeler's cries for help defendant G. Dupra, a corrections officer who at the time was smoking a cigarette outside of the dormitory, failed to intercede on his behalf. Plaintiff asserts that as a result of the incident he suffered injuries to his mouth, requiring medical treatment.

The affidavits and exhibits supplied by the defendants in support of their motion recount a very different version of the January 13, 2003 incident. According to the defendants, plaintiff and the other inmate involved were observed by defendant Dupra, who at the time was making rounds in the I-2 dormitory recreation area, engaged in a fist fight. Dupra ordered the two inmates to stop fighting and telephoned Corrections Sergeant Frank Quimby, also a defendant in the case, to report the incident and request assistance. After making the call defendant Dupra observed plaintiff run into the other inmate's cube, "swinging a sock with a can in it", and hitting the inmate in the head. After defendant Dupra ordered the plaintiff to stop, Wheeler tried to once again hit the inmate. When the inmate took the sock away from the plaintiff, Wheeler left but returned into the cube with another can, threatening to throw it at the prisoner.

As a result of the incident, plaintiff was medically treated at the prison facility and placed in confinement within the Franklin Special Housing Unit ("SHU"). A misbehavior report was subsequently generated on January 13, 2003 by defendant Dupra, charging Wheeler with assaulting another inmate, engaging in a fight, creating a disturbance, failure to obey a direct order, and possession of an item classified as a weapon. Following a Tier III disciplinary hearing, held on or about January 24, 2003, plaintiff was found guilty on all or most of the disciplinary charges, resulting in an imposition of seven months of disciplinary SHU confinement, with a corresponding deprivation of recreation, package, commissary, and telephone privileges, and a nine-month loss of good time credits. In addition, plaintiff was prosecuted criminally for promoting prison contraband, resulting in a guilty plea and corresponding conviction of attempted promotion of prison contraband and a sentence to an additional, indeterminate term of imprisonment of between one and one half and three years.

Plaintiff's claims in this action stem principally from his contention that defendants failed to adequately protect him, despite requests for intervention. The parties also disagree regarding the events forming the basis for this claim.

Plaintiff asserts that while at Franklin he informed DOCS officials, including Commissioner Goord, on a number of occasions that he feared for his personal health and safety, attributing his concerns to the nature of his underlying conviction. Plaintiff maintains that those complaints were disregarded, and intimates that defendant Dupra chose to ignore his fellow inmate's attack on January 13, 2003.

Once again, defendants' submissions reveal an extremely different situation. Though it appears that protective custody for the plaintiff was discussed with prison officials

>at Franklin on several occasions, literally from the outset of his confinement there, plaintiff opted against such an arrangement, signing written protective custody waiver forms on June 7,8, 2002, July 15, 2002, August 1, 2002, and August 12, 2002. According to defendants' submissions, the matter of protective custody was once again raised by the plaintiff on December 19, 2002, when Wheeler wrote to Commissioner Goord reciting his experiences while at Franklin and several other facilities, and advising of his receipt of death threat notes, stating "I wish to be place [sic] into protective custody." Plaintiff's letter was received in the Commissioner's office on or about December 26, 2002. Plaintiff's letter to Commissioner Goord generated a response dated January 9, 2003 from Deputy DOCS Commissioner Lucien J. Leclaire, Jr., which letter was copied to Acting Franklin Superintendent Sears. That communication makes reference to discussions by DOCS staff members with the plaintiff concerning his facility status and Wheeler's indication that he no longer requested protective custody status. Significantly, the letter pointedly advised the plaintiff that in the event of further concerns regarding his safety he should communicate directly with Deputy Superintendent for Security Rock.
>
>Plaintiff followed his communication to Commissioner Goord with a letter to Franklin Deputy Superintendent of Administration Sears, who appears at the time to have been the acting superintendent at the facility. In that letter, plaintiff seemingly requested protective custody based upon death threats received by him.
>
>In apparent response to those letters defendant Quimby, a corrections sergeant, interviewed the plaintiff on December 26, 2002. During that interview, Wheeler advised Quimby that he did not wish to be placed in protective custody, and signed a protective custody waiver form to that effect, dated December 26, 2002. According to the defendants, at no time between December 26, 2002 and the January 13, 2003 incident did Wheeler communicate further with either Sergeant Quimby or Corrections Officer Dupra requesting protective custody.

(Citations to record omitted.)

## DISCUSSION

The Court adopts Magistrate Judge Peebles' summary of the law applicable to summary judgment motions. The Court further adopts his recommendation against dismissal on the ground of failure to exhaust available administrative remedies, because "it appears from the record now before the court, construed in a light most favorable to him, that plaintiff may have been misled by prison officials regarding the course of action to take in pursuing a grievance

regarding his claims[.]" With respect to the question of the sufficiency of plaintiffs' allegations and proof regarding the failure of prison officials to protect him, the Court agrees with Magistrate Judge Peebles that the record discloses a genuine, triable issue of material fact regarding whether defendants failed to protect the plaintiff following an attack by a fellow inmate on January 13, 2003. As will be discussed further below, the Court also agrees with Magistrate Judge Peebles that plaintiff's claims of failure to protect should be dismissed to the extent that they are based on plaintiff's expressions of fear for his safety prior to the January 13, 2003 incident. On the issue of retaliation, the Court agrees with Magistrate Judge Peebles that there is nothing in the record to link the alleged protected activity (filing grievances and writing letters to prison authorities) to the alleged adverse action (SHU confinement); rather, the evidence is that the SHU confinement stemmed from plaintiff's participation in the January 13, 2003 incident. Further, the Court adopts Magistrate Judge Peebles' recommendation of dismissal of all claims against Commissioner Goord on the ground of his lack of personal involvement.

Plaintiff's claim that defendants failed to protect him in violation of his Eighth Amendment rights is based on the principle that prison officials are required "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A claim of failure to protect has both an objective and a subjective element. *See id*. To establish the objective element, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. To establish the subjective element, he must demonstrate that the prison official showed "deliberate indifference" to his safety. *Id.*

With respect to the objective element – whether the inmate has shown that he was incarcerated under conditions posing a substantial risk of serious harm – the Court agrees with Magistrate Judge Peebles that for purposes of this motion plaintiff's submissions are sufficient to satisfy this element.[1]  The Court adopts Magistrate Judge Peebles' recommendation in this regard.

Turning to the subjective element – whether the prison officials showed deliberate indifference to his safety – the Court notes that to show deliberate indifference the inmate must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  On this issue, the Report and Recommendation states as follows:

> Leaving aside the altercation on January 13, 2003, there is no evidence now before the court from which a reasonable factfinder could conclude awareness on the part of any of the three named defendants of a substantial risk of serious harm to plaintiff's health and safety, and their disregard of that risk. Commissioner Goord, assuming his receipt of plaintiff's December 19, 2002 letter, delegated the matter to a deputy commissioner who investigated and was apparently advised that plaintiff no longer requested protective custody. Plaintiff was advised of that finding and notified that in the event of a change of heart, he should communicate in writing to the deputy superintendent for security at the facility.
>
> There is no evidence in the record to suggest that prior to January 13, 2003, Corrections Officer Dupra was aware of problems or safety concerns, and in fact he expressly disavows any such knowledge – without contradiction from the plaintiff. Similarly, Sergeant Quimby, who interviewed the plaintiff regarding his safety concerns, points out that on December 26, 2002 plaintiff executed a protective custody waiver, and that between then and January 13, 2003, the date of the incident involving

---

[1] As Magistrate Judge Peebles points out, there is evidence that plaintiff had been stabbed on two earlier occasions at other correctional facilities and that he had received death threats which he alleges were due to the nature of the crime for which he was convicted, *i.e.*, attempted rape.

-6-

> Wheeler and his fellow inmate, Quimby had no further conversations with the plaintiff regarding his difficulties. Under these circumstances no reasonable factfinder could conclude that the three individual defendants were subjectively indifferent to a risk of harm to the plaintiff prior to the January 13, 2003 incident.
>
> While the record now before the court falls short of establishing an overall failure by the defendants to protect Wheeler from harm, the conflicting accounts regarding the January 13, 2003 altercation preclude summary dismissal of plaintiff's claims as a matter of law. On that occasion, according to the plaintiff, defendant Dupra ignored Wheeler's cries for help upon being attacked by a fellow inmate. However skeptical one may be about the likelihood of plaintiff establishing his version of the relevant events at trial, based upon his subsequent disciplinary and criminal convictions growing out of the incident, when the facts are viewed in a light most favorable to him, a reasonable factfinder could conclude that defendants, and in particular defendant Dupra, failed to protect the plaintiff on that occasion, thus giving rise to a constitutional violation.

(Case citations and citations to record omitted.)

Plaintiff's objection appears to be directed primarily to the portion of the Report and Recommendation addressing whether defendants were deliberately indifferent in failing to come to plaintiff's aid during the January 13, 2003 incident itself. On this issue, however, Magistrate Judge Peebles' recommendation favors plaintiff, that is, he recommends against summary judgment. However, to a limited extent plaintiff's objection may also be read to challenge the recommendation to dismiss claims of deliberate indifference based on defendants' alleged failure to respond to plaintiff's concerns for his safety expressed during the months preceding the January 13, 2003 incident. Plaintiff's objection may also be read to challenge the recommendation to dismiss all claims against Goord on the ground of lack of personal involvement. Thus, the Court reviews these issues *de novo*.

The Court first considers the question of deliberate indifference based on defendants' alleged failure to respond to plaintiff's concerns for his safety expressed during the months preceding the January 13, 2003 incident. It is significant that in response to plaintiff's letters

expressing concern for his safety, Sergeant Quimby interviewed plaintiff and plaintiff executed a protective custody status waiver form on December 26, 2002 – about three weeks prior to the January 13, 2003 incident.  There is nothing to contradict the evidence that thereafter plaintiff made no further requests for protection and defendants had no awareness of a substantial risk of serious harm to plaintiff's health and safety during that time period.  Plaintiff's vague conclusory statements in his objection that defendants were "well aware of my situation (meaning my crime – stab[bed] twice at different facilities...)" and "either had some role in arranging the attack or simply failed to protect plaintiff from the attack when they had an opportunity to do so" are insufficient to raise a question of fact on this issue.[2]  Upon *de novo* review of the record, in particular plaintiff's objection and his other submissions, as well as the affidavits by defendants Quimby and Dupra, the Court concludes that defendants are entitled to summary judgment dismissing plaintiff's claim of deliberate indifference stemming from any events prior to the January 13, 2003 incident.

Likewise, defendants are entitled to summary judgment dismissing all claims against defendant Commissioner Goord on the ground of lack of personal involvement.  Plaintiff wholly fails to create a question of fact in the face of evidence that the Commissioner's subordinate was assigned to investigate plaintiff's letters and that, upon investigation, the subordinate correctly reported that plaintiff no longer requested protective custody.

## CONCLUSION

---

[2] While not clear, plaintiff's objection also appears to assert that the January 9, 2003 letter (advising him that if he had further safety concerns he should contact Deputy Superintendent for Security Rock) was stolen from his cell.  Assuming that this is so, it does not even suggest that thereafter plaintiff communicated or attempted to communicate to Rock or anyone else that he feared for his safety or that he wished to rescind his December 26, 2002 waiver.

Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation in its entirety.  It is therefore

ORDERED that the Report and Recommendation of United States Magistrate Judge David E. Peebles is hereby approved and adopted; and it is further

ORDERED that defendants' motion for summary judgment (Dkt. No. 45) is granted in part and denied in part; and it is further

ORDERED that all claims against defendant Commissioner Goord are dismissed on the merits; and it is further

ORDERED that all claims against defendants Frank Quimby and G. Dupra are dismissed on the merits except those based on their alleged failure to come to plaintiff's aid following an attack by a fellow inmate on January 13, 2003.

IT IS SO ORDERED.

September 19, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge